[Sac. No. 6088. In Bank. Dec. 19, 1951.]

Estate of WLADYSLAW SALMONSKI, Deceased. JOSE-PHINE SALMONSKI et al., Appellants, v. THERESA BARDZINSKI et al., Respondents.

Thomas W. Loris for Appellants.

Busick & Busick, Donald W. McMurchie and Charles M. Frey for Respondents.

SPENCE, J.—This is an appeal from a judgment determining heirship and interest in the estate of Wladyslaw Salmonski, deceased, upon proceedings instituted under the provisions of section 1080 of the Probate Code. The parties argue the propriety of the court's construction of two testamentary documents, executed at different dates and both admitted to probate, one as the decedent's will and the other as a codicil thereto. Consideration of the record sustains the judgment as a proper adjudication of the problem presented.

Wladyslaw Salmonski died on July 6, 1946. He left a formal typewritten will executed June 12, 1946. Therein he gave to his sister, Jozefa Salmonski, and to his brother, Waclaw Salmonski, each 45 per cent of his estate. Each bequest was conditioned upon the beneficiary's producing proof of survivorship within one year of the decedent's death; otherwise, such bequest should lapse. He stated that such condition was imposed because his brother and sister lived in that part of Poland overrun by invading armies, that he had written to them on several occasions "since World War II ended" but had received no reply, and that he was doubtful if either was alive. The remaining 10 per cent of his estate he gave to Theresa Bardzinski. He further provided that in the event either or both bequests to his brother and sister should lapse, then Leocadia Butkin should receive $1,000 and Mrs. Bardzinski should have all the residue of his estate. Mrs. Bardzinski was named executrix and as such, he gave her power of sale of his property subject to confirmation of the court.

Five days after the execution of this will, the decedent wrote the following letter:

"Sacramento, Calif.
June 17, 1946.

"Dear Mrs. Bardzinski.

"In case of my death kindly sell the stocks and devide everything that belongs to me between yourself and Mrs. Leocadia Butkin.

"This is my last wish.

Your friend
Walter Wladyslaw Salmonski"

Upon the decedent's death the following month, Mrs. Bardzinski filed a petition praying that both documents be admitted to probate together as his last will and testament, and that she be appointed the executrix. She alleged the letter to be a codicil to the formal will. Mrs. Butkin then filed a contest, in which she asked that the first document, the formal will, be denied probate and that the letter be admitted as the holographic will of the decedent. At the same time she filed a petition for her appointment as administratrix with the will annexed of the alleged holographic will. All three matters were heard together and the court made the following dispositions thereof in its order of November 29, 1946: It dismissed the contest, it denied Mrs. Butkin's petition for letters of administration upon the holographic will alone, and it admitted both documents to probate together as the last will and testament of the decedent, with the appointment of Mrs. Bardzinski as the executrix thereof. The letter was admitted to probate as a codicil of the prior will. No appeal was taken from this order and it has now become final.

Thereafter the brother and sister of the decedent appeared in the proceeding and, as attested by the court's order of July 3, 1947, made the necessary proof of survivorship. On April 12, 1949, they instituted the present proceeding to determine heirship (Prob. Code, § 1080), each claiming to be entitled to 45 per cent of the distributable estate of the deceased. Mrs. Bardzinski and Mrs. Butkin filed answers, alleging that the whole of the estate should be distributed one half to each. At the time set for hearing, counsel for Mrs. Butkin moved the court for an order submitting the matter on the pleadings and all other papers on file in the estate proceeding, upon the ground that no other evidence, oral or documentary, was admissible. This motion was granted over

objection of counsel for the brother and sister. Thereafter the court adjudged Mrs. Bardzinski and Mrs. Butkin to be entitled to distribution of the decedent's estate, one half to each, and that the brother and sister had no interest therein.

In disposing of the heirship proceeding, the court made findings as follows: That decedent "died testate leaving a Will dated June 12, 1946, and an Holographic Will, wholly dated, written and signed in the handwriting of said decedent, dated June 17, 1946"; that "after a contest of the Will between said Leocadia Butkin, as contestant, and said Theresa Bardzinski, as contestee, both documents were admitted to probate, one as the Will and the other as a Codicil thereto, as the Last Will and Testament of said Decedent"; that "said Theresa Bardzinski . . . was appointed Executrix of the said Will and Codicil and thereafter she duly qualified as such"; that "said Codicil is in words and figures, as follows [Quoting the letter of June 17, 1946]"; that "said Codicil . . . [was] addressed to Mrs. Bardzinski who was named in said Will dated June 12, 1946, as Executrix thereof"; that "there [was] no uncertainty in the words or language of either the said Will or the said Codicil"; that "said Codicil [was] a later testamentary disposition . . . and by its terms adequate to . . . dispose of the entire estate of the Decedent"; that therefore "distribution of the estate . . . should be made under the terms and provisions of the said Codicil; that "said Codicil . . . bequeathes . . . subject to administration, one-half (½) of the property [in] the estate" to Mrs. Bardzinski and "one-half (½)" to Mrs. Butkin; that neither the brother nor the sister "ha[d] any right, title or interest in or to the estate . . . or any part thereof" and "neither . . . [was] entitled to distribution to him or her of any part" thereof. The court concluded that distribution of the decedent's estate should be so ordered and it was decreed that the distribution, when made, should be in accordance with the findings. From such judgment the brother and sister of the decedent have appealed.

The respective positions of the parties may be briefly stated as follows: Appellants argue that (1) the order admitting the will and codicil to probate was "absolute and unqualified," with the result that both testamentary documents were adjudicated to constitute "the entire will" of the decedent and in the construction thereof both must be considered; that (2) in hearing the contest as to the status of the respec-

tive documents before making its order for admission to probate, the court considered and rejected the claim that the letter as the later instrument revoked the earlier will, and that since no appeal was taken from said order, it has become a final and conclusive adjudication of that issue; that (3) the conditions impressed upon the bequests made to respondents in the will apply likewise as incidents to the bequests made to them in the codicil, with the latter classified as "additional or substituted gifts" and the interest of respondents in the estate to vest "only in the event that the brother and sister of the decedent failed to produce proof of their existence within a year from the date of the testator's death"; that (4) the rule of dependent relative revocation is applicable upon the premise that the decedent executed the codicil "under the mistaken belief that the brother and sister were not alive," and the general tenor of the entire will indicates the testator's intention "to modify and change" the bequests to his brother and sister "only in the event [they] failed to appear within the year"; and that (5) the court erred in refusing to allow appellants "the right to present extrinsic evidence regarding the facts surrounding the execution of the will and codicil," for when the two instruments are "considered as one entire document . . . ambiguity and uncertainty" appear, and in the absence of the proffered evidence, the order disposing of the opposing claims of interest in the estate may not be sustained.

On the other hand, respondents contend that (1) the order admitting the will and codicil to probate reflects no attempt on the part of the court to construe those documents but only its determination that both constituted "the last expression of the testator's intention" and "together express his desire that Theresa Bardzinski be the Executrix of his estate"; that (2) the codicil plainly disposed of the entire estate in absolute and independent terms, wholly contrary to the conditional tenor of the bequests under the language of the previously executed will, and distribution of the estate was ordered in recognition of this circumstance of inconsistence working a revocation of the dispositive provisions in the earlier instrument; that (3) the doctrine of dependent relative revocation has no application, for the "mistaken belief" or doubt as to the existence of appellants does not appear on the face of the codicil as the later testamentary instrument effecting a complete disposition of the estate; and that (4) the court "correctly excluded testimony of facts sur-

rounding the execution of the two documents admitted to probate when [they] were clear, certain and not ambiguous on their face.''

■ When there is presented for probate one or more instruments claimed to constitute a will, the only question legitimately before the court is whether or not the propounded instrument or instruments constitute a will; and in determining that question the court ordinarily has nothing to do with the construction of the will, resolving inconsistencies in the disposition of property or interpreting the testamentary provisions. (26 Cal.Jur. § 335, p. 1068; *Estate of Murphy,* 104 Cal. 554, 566 [38 P. 543]; *Estate of Cook,* 173 Cal. 465, 468 [160 P. 553]; *Estate of Dunn,* 32 Cal.App.2d 240, 243 [89 P.2d 667]; *Estate of Montgomery,* 89 Cal.App.2d 664, 667 [201 P.2d 569].) ■ However, what documents go to make up a will must necessarily be determined in the first instance on application for probate; and determinations so made have the effect of judgments and become conclusive in the course of time. Apt illustration of this principle is found in the case of *Estate of Parsons,* 196 Cal. 294 [237 P. 744]. There a document had been admitted to probate as the will of the decedent. Pencil lines and marks appeared on the face of the will which might or might not have been made by the testator with intent to revoke three legacies. No mention was made of these markings or cancellations in the order admitting the document to probate in its entirety. No appeal was taken from the order nor was any contest initiated within the year then allowed therefor. On a petition for partial distribution later, the court found that the testator had drawn the lines with intent to cancel the dispositive provisions contained in the paragraphs so marked. In reviewing the propriety of this finding, it was held that the ''question of revocation'' must be ''presented and decided either when the will is offered for probate, or by a proceeding or contest brought within'' the statutory time thereafter; that ''probate procedure . . . contemplates in the administration of the estates of deceased persons a series of different proceedings, each of which is separate as to the matters embraced within its purview''; that an ''adjudication as to each step in this series is intended to be final in its nature, and not subject to review in a subsequent stage of the administration of the estate''; that an ''order admitting a will'' to probate is appealable; that a ''proceeding for the probate

of [a] will is one *in rem,* instituted for the purpose of establishing the status of a written instrument"; that an "attack aimed at [a] will . . . in response to a petition for . . . distribution filed more than one year after the will was admitted to probate—an independent and wholly distinct proceeding from that for the probate of the document . .. . is . . . a collateral and not a direct attack"; that where questions of revocation are so tendered, the "issue thus joined was one which could properly have been raised upon the proceeding for . . . probate"; and that if not so raised, then the order admitting the document as a will is conclusive against any later attempt to invalidate part of the document upon claim of cancellation or revocation. (*Estate of Parsons,* 196 Cal. 294, 298-300 [237 P. 744]; see, also, *Estate of Moeller,* 199 Cal. 705, 709-711 [251 P. 311].)

█ Consistent with these observations, it is clear here that in the absence of an appeal, the order admitting the two documents to probate after contest now stands as a conclusive adjudication of their status as a will and a codicil thereto; but beyond consideration for the determination of that precise issue of what documents constituted the deceased's last will, questions of construction and interpretation in measure of the effect of the two documents one on the other were "appropriate matters for consideration and determination" in the instant heirship proceeding in resolving the opposing claims for distribution of the estate. (*Estate of Dunn, supra,* 32 Cal.App.2d 240, 243; also, *Estate of Plaut,* 27 Cal.2d 424, 427 [164 P.2d 765, 162 A.L.R. 837].) It is apparent that the two documents were admitted to probate because both had been duly executed, and the letter as the later instrument contained no express revocation clause in indication of the testator's intent that no effect was to be given to the earlier instrument. (*Estate of Brodersen,* 102 Cal.App.2d 896, 906 [229 P.2d 38].) █ It was not incumbent then on the probate court to determine what bequests in the will were superseded by the codicil, for the earlier executed document, regardless of the efficacy of its dispositive clauses, was entitled to probate as a testamentary instrument. (*In re Hickman,* 101 Cal. 609, 613 [36 P. 118]; *Estate of Meade,* 118 Cal. 428, 430 [50 P. 541, 62 Am.St.Rep. 244]; *Estate of Philippi,* 71 Cal.App.2d 127, 134 [161 P.2d 1006]; *Estate of Selditch,* 91 Cal.App.2d 62, 67 [204 P.2d 364].)

█ Where an executor is named in the first instrument but not in the second, and the latter is wholly inconsistent in its

other provisions, the determination of the question whether the appointment of the executor is to be given effect is left to the direction of the court. (Prob. Code, § 72; but see *Estate of Iburg,* 196 Cal. 333, 335 [238 P. 74], where the court refused to give effect to the appointment of an executor in the first will; *Estate of Shute,* 55 Cal.App.2d 573, 575 [131 P. 2d 54]; 19 Cal.L.Rev. 602, 610-611.) ■ Accordingly here, the order of admission to probate, conclusive in subsequent proceedings as to the ultimate fact that the two documents stand together as the complete and entire will of the decedent, does not affect the power of the court to determine their import under applicable rules of construction in effecting distribution of the estate as later presented for adjudication. (*Estate of Brodersen, supra,* 102 Cal.App.2d 896, 905-906.)

■ In the interpretation of wills, ascertainment of the intention of the testator is the cardinal rule of construction, to which all other rules must yield. (Prob. Code, § 101; *Estate of Lawrence,* 17 Cal.2d 1, 6 [108 P.2d 893].) ■ In the process of arriving at that intention, different parts of the will are to be harmonized if possible—endeavoring to give expression to all the words of a will (Prob. Code, § 102), referring to other parts of the will to clear up any doubt or uncertainty that may appear with respect to any single part, and construing all parts 'in relation to each other so as, if possible, to form one consistent whole but "where several parts are absolutely irreconcilable, the latter must prevail." (Prob. Code, § 103; *Estate of Moorehouse,* 64 Cal.App.2d 210, 215 [148 P.2d 385].) ■ All instruments constituting the testamentary disposition must be "construed together as one instrument" (Prob. Code, § 101), but the later executed document as the testator's last expression must control where it makes a clear and distinct gift of property wholly irreconcilable with a dispositive provision in the prior document. (*Estate of Mallon,* 28 Cal.App.2d 106, 110 [81 P.2d 992].)

■ A clear and distinct devise or bequest cannot be affected by inference or arguments from other parts of the instrument. (Prob. Code, § 104; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 215.)

Manifestly here, the dispositive provisions of the letter or codicil stand in sharp contrast with those of the formal will. The first document was clear in all its terms and the parties agree that it disposed of the entire estate. But five days later the testator executed the document admitted to probate

as the codicil to the formal will. The terms of this second document were equally clear and adequate in disposing of the entire estate but in a manner contrary to and destructive of the dispositive provisions in the formal will. ▮▮▮ While the "terms of a will may not be disturbed by language in a codicil unless such language evinces a limitation or change in words as definite in expression as the terms of the will" (*Estate of Dunn, supra,* 32 Cal.App.2d 240, 242; see, also, *Estate of Dominici,* 151 Cal. 181, 189-190 [90 P. 448] ; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 216), such appears to be the case here by reason of the independent sufficiency of each of the two successive instruments in their dispositive provisions.

Appellants seek a construction of the two documents so that the plain dispositions of the codicil would be made conditional and not absolute. To this point they argue that the entire will should be construed as providing for the testator's brother and sister if they appeared and proved their survivorship, and that if they did not, then and then only would respondents take the whole estate under the codicil. ▮▮▮ Accordingly, they cite the general rule that additional or substitutional bequests given by a codicil are attended by the same incidences and conditions as were the bequests given originally by the will. (57 Am.Jur. § 610, p. 418; anno. 156 A.L.R. 795; *Estate of De Laveaga,* 119 Cal. 651, 653-656 [51 P. 1074] ; *Estate of Cross,* 163 Cal. 778, 781 [127 P. 70] ; see, also, *Estate of Hite,* 155 Cal. 436, 441-444 [101 P. 443, 17 Ann.Cas. 993, 21 L.R.A.N.S. 953].) But such rule has no application where "from the language used in the codicil, or from the application of recognized rules for the construction of wills," it appears that "the testator intended by the codicil to make a substantive and independent bequest." (*Estate of De Laveaga, supra,* at p. 655.) ▮▮▮ While the will and codicil together constitute the decedent's last will in testamentary disposition of his estate, they will not be regarded as a single instrument and as if both had been executed at the time of making of the codicil where the manifest intention of the testator requires otherwise. ▮▮▮ The mere making of a codicil gives rise to the inference of a change of intention, a distinguishable circumstance which does not enter in the construction of a single document constituting the decedent's will, so that where there are any genuine inconsistencies between the two instruments, the codicil, as the latest expression of the testator's wishes, must

be given precedence. (26 Cal.Jur. § 143, pp. 809-810; 57 Am.Jur. § 608, p. 416; *Estate of Moorehouse, supra,* 64 Cal. App.2d 210, 215.)

The testator made a formal will indicating consultation with and guidance of counsel. Five days thereafter he wrote the letter declared to be a codicil and by it he completely changed the dispositive provisions of the formal will. There is not here a single testamentary act covering both will and codicil, but two distinct testamentary acts occurring at different times, the later making no reference to the earlier bequests but consisting in terms of an unqualified and unconditional disposition of the entire estate. For what reason the testator only five days later made the subsequent and totally dissimilar disposition does not appear, but his intention must be determined as expressed in clear language by his last testamentary act evincing a wholly new and complete disposition of his entire estate rather than a mere substitutional provision in relation to the conditions earlier prescribed. (*Estate of Bourn,* 25 Cal.App.2d 590, 602 [78 P.2d 193]; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 216). The letter which constituted the codicil was addressed to Mrs. Bardzinski, whom the testator had named as his executrix in his prior formal will. He directed her to sell his stocks, a direction which he must be presumed to have known that she could not effect except as the executrix of his will, and accordingly he must be deemed then to have had his formal will in mind. He further told her that after the sale of the stocks, she was to divide everything that belonged to him between herself and Mrs. Butkin. So having in mind the dispositive provisions which he had made in the formal will in favor of appellants, his brother and sister, conditional as they were, it necessarily follows that what he said in the codicil reflects a clear change of intent in respect to those dispositions and his purpose to leave his entire estate to respondents here. There is no language, no expression of any nature, which would suggest that he intended that the absolute terms of the bequests in the codicil should be modified or subject to conditions prescribed in the will. While the two documents should be read together in the sense that each should be considered in the light of the other, and their terms harmonized where possible, that is a very different thing from changing the express terms of the later codicil by importing conditions into it without its containing express warrant

therefor. ▇ It is pertinent to note that the decedent, in view of his having given 90 per cent of his estate to appellants, his brother and sister, conditioned upon their proof of survivorship, did not direct Mrs. Bardzinski by his codicil to divide 10 per cent of his estate between herself and Mrs. Butkin, but rather he directed Mrs. Bardzinski to divide everything and he declared such distribution to be his "last wish." Such words addressed to the executrix are mandatory and evince an intent that no limitation or condition be attached to the absolute terms of the dispositive provisions in the codicil. (*Estate of Marti,* 132 Cal. 666, 671 [61 P. 964, 64 P. 1071]; *Estate of Miles,* 72 Cal.App.2d 336, 343 [164 P.2d 546].) Moreover, giving the words of the codicil their ordinary and natural meaning, the reference therein to the disposition of his estate as his "last wish" is not without significance. (Prob. Code, § 106; 57 Am.Jur. § 1148, p. 746; *Estate of Tooley,* 170 Cal. 164, 167 [149 P. 574, Ann.Cas. 1917B 516].) Construing the two documents together as the decedent's "last will," the dispositive provisions of the codicil appear last in the will, they are absolutely irreconcilable with the provisions favoring appellants, his brother and sister, and being later in time and place, they take precedence.

▇ Nor does the doctrine of dependent relative revocation have application here in relation to the efficacy of the two documents admitted to probate together as the testator's last will. No question arises as to the effectiveness of the second instrument, the codicil, so that upon its failure to be operative for want of proper execution or other cause, the testator will be presumed to have intended the original instrument to stand to the extent that the later proves ineffective. (57 Am. Jur. § 514, p. 356; *Estate of Kaufman,* 25 Cal.2d 854, 859 [155 P.2d 831]; *Estate of Kahan,* 76 Cal.App.2d 766, 768 [174 P.2d 15].) ▇ Likewise application of that doctrine may not be correlated with a false assumption of fact as basis for execution of the second instrument, the codicil, for it is his intent as therein manifested which is the controlling consideration. (57 Am.Jur. § 519, p. 360; *Campbell* v. *French,* 3 Vesey Jr. 321, 323, 30 Eng.Rep. 1033, 1034; *Gillespie* v. *Gillespie,* 96 N.J.Eq. 501 [126 A. 744, 748]; see, also, Page on Wills, vol. I, Lifetime ed., § 484, p. 897; 5 So.Cal.L.Rev. 272, 300.)

▇ In invoking such doctrine, appellants argue that the revocation, if any, by reason of the execution of the codicil,

was conditioned upon the decedent's mistaken belief that his brother and sister were not living. To this point they refer to the mistaken belief expressed in the will itself coincident with the decedent's declaration that it was doubtful if they were still alive. But application of such doctrine here would have to stem from the premise that at some time during the five days intervening between the execution of the formal will and the writing of the codicil, the decedent mistakenly concluded that his brother and sister were dead, and for that reason wrote the letter to Mrs. Bardzinski. This is a speculative assumption having no support in the language of the subsequently executed instrument. It is true that he did state in the formal will his doubt of their survival. If that doubt continued and motivated the changes in testamentary disposition expressed in his letter as his "last wish," that was his privilege in providing for the distribution of his estate at death but in so doing, he was not acting under a mistake. Rather his action throughout would be based upon an existing doubt. If he arrived at the mistaken belief that they were dead, he failed to state that fact either directly or by implication, and without such expression somewhere in the testamentary documents the court is without power to supply it. (*Estate of Hartman,* 21 Cal.App.2d 266, 270 [68 P.2d 744]; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 216.)

Appellants cite the settled rule that if there is any doubt or uncertainty as to the testator's intent, an interpretation will be adopted which prefers his natural heirs as against strangers (*Estate of Norrish,* 135 Cal.App. 166, 169 [26 P.2d 530]; *Estate of Boyd,* 24 Cal.App.2d 287, 289-290 [74 P.2d 1049]). However, such principle of construction cannot alter a clear and positive bequest in expression of the testator's purpose (*Estate of Watts,* 179 Cal. 20, 23 [175 P. 415]), for he "may transmit without regard to moral or natural claims upon his bounty." (*Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 216.)

Finally there is appellants' contention that the court erred in refusing to allow them to introduce evidence of the circumstances attending the execution of the two testamentary documents. Assuming that this contention may now be considered without there having been made in the trial court or on this appeal some statement of the evidence upon which appellants would rely, the situation presented here does not appear to be one which would authorize the taking of testi-

mony as an aid in ascertaining the testator's intent. ▮ When an uncertainty arises upon the face of a will as to the meaning. of any of its provisions, the testator's intent is to be ascertained from the words of the will, but the circumstances of the execution thereof may be taken into consideration, excluding the oral declarations of the testator as to his intentions. (Prob. Code, § 105; 57 Am.Jur. § 1040 et seq., p. 674 et seq.; *Estate of Bourn, supra,* 25 Cal.App.2d 590, 602 [78 P.2d 193]; *Estate of Mallon, supra,* 28 Cal.App. 2d 106, 110; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 216.) ▮ But "where the intent is plain" from the words used, "the duty of the court is to declare that intent, without regard to the consequences." (*Estate of Spreckels,* 162 Cal. 559, 561 [123 P. 371]; see 26 Cal.Jur. § 200, p. 884.)

In line with the foregoing observations, it is our conclusion that the probate court properly construed the documents in question and determined that the property should be distributed in accordance with the terms of the codicil as the later testamentary expression—with the operative force of the formal will accordingly confined to the appointment of respondent Bardzinski as executrix.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.