209 Cal.App.2d 7 (1962)
Estate of ESTELLA M. WIEMER, Deceased. THOMAS LEE, a Minor, etc., et al., Objectors and Appellants,
v.
ESTRELLITA ARMSTRONG, as Coexecutrix, etc., et al., Petitioners and Respondents.
Civ. No. 7030. 
California Court of Appeals. Fourth Dist. 
Oct. 24, 1962.
 A. G. Ritter for Appellants.
 Gordon, Knapp, Gill & Hibbert and B. Richard Marsh for Respondent Maude Smith Gill.
 COUGHLIN, J.
 The issues on this appeal involve the construction of two instruments admitted to probate as the last will, and a codicil thereto, of Estella M. Wiemer, deceased.
 Mrs. Wiemer executed a formal will on December 8, 1953, by which she disposed of her entire estate; devised and bequeathed specific property to her two sisters, her brother, a foster granddaughter, a foster grandson, and a foster son-in-law, or to their heirs in the event they predeceased the testatrix; left the residue of her estate to the foster granddaughter *9 and foster grandson; and named the latter executors of her will. In this will the testatrix declared that she had no natural children, but that she had raised Genevieve Lee for whom she had the same affection as a natural daughter. The persons referred to herein as the foster son-in-law, foster granddaughter, and foster grandson are the husband and children respectively of Genevieve Lee. The foster grandson had two children who were not named in the formal will. After its execution, the foster son-in-law, the brother, and a sister died. On June 22, 1959, which was approximately five and one- half years after execution of the formal will, Mrs. Wiemer wrote the following:
 "Monday June 22 - 59"
 "Just came from Dr. Stititus office Heart Examined. Found it irregular due to breathing spell I was having. They took a Cardigraf Dont know what it shows?"
 Will
 If I should die suddenly I want Maud to have 10,000 Tommy -- Lindy the rest of my property, $5,0000 [fn. 1] for Orlan Kiser Bury near Frank -- Get Gertrude to take care of services and Bill & Janise with my own family Alfred -- Estrellita
 Estella M. Wiemer.""
 Tommy and Linda were the children of the foster grandson Alfred; Maude was the surviving sister of the testatrix; Frank was the latter's deceased husband; Alfred and Estrellita were her foster grandson and foster granddaughter respectively; and Orlan Kiser was the former husband of Estrellita who lived near the testatrix at the time the holographic will was executed. It would appear that sometime after the execution of the formal will Estrellita married a man named Armstrong.
 The foster grandson Alfred and the foster granddaughter Estrellita petitioned the court that the instruments of December 8, 1953, and June 22, 1959, be admitted to probate, respectively, *10 as the last will, and a codicil thereto, of Estella M. Wiemer, and that they be appointed executors thereof. The court made its order accordingly. Thereafter upon a petition to approve a current account, for partial distribution, and for other relief, construction of the two instruments in question was placed in issue by appropriate pleadings; the court determined that the provisions of both instruments respecting the specific bequests and devises therein should control distribution thereof, and that the residue of the estate, after satisfaction of all of said specific bequests and devises, should be distributed in accord with the residuary clause in the holographic will, i.e., to the foster great-grandchildren Tommy and Linda; findings of fact in accord therewith were made and filed; an order was entered thereon decreeing partial distribution and also granting other relief; and the residuary legatees Tommy and Linda appeal from the whole order so entered. Although the executors, all of the heirs under the formal will who appeared in the proceedings before the trial court, and Orlan Kiser properly may be designated respondents herein, only Maude Gill, the decedent's surviving sister, has responded to the appeal by an appearance before this court.
 [1a] In substance, the trial court concluded that the two instruments should be construed together to determine the intention of the testatrix; that there was no inconsistency between those provisions of the two wills directing specific bequests or devises; that distribution should be made to the specific legatees and devisees named in each of the two instruments as therein provided; that the provision in the holographic will "Tommy -- Lindy the rest of my property" disposed of the residue of the estate after satisfaction of the specific devises and bequests in both wills; that this residuary provision was in conflict with the residuary provisions in the formal will; and that the residuary clause in the holographic will should prevail, as it was later in time.
 [2a] The foster great-grandchildren, Tommy and Linda, contend that the holographic will is an independent testamentary declaration of Mrs. Wiemer's intention; that its dispositive provisions are wholly inconsistent with those contained in the formal will; that these provisions disposed of the whole of her estate; that they alone control disposition of the estate; and that the order of the trial court to the contrary was error. We are in accord with this contention.
 The conclusion reached by the trial court results from its *11 application of the rule that: "Several testamentary instruments executed by the same testator are to be taken and construed together as one instrument." (Prob. Code, 101; Estate of Iburg, 196 Cal. 333, 334 [238 P. 74]; Estate of Cross, 163 Cal. 778, 781 [127 P. 70]; In re Ladd, 94 Cal. 670, 674 [30 P. 99]); from its failure to consider the later instrument, i.e., the holographic will, as a unit of expression; and from its consequent conclusion that the residuary clause in the holographic will referred to the residuum of the estate after distribution of the specific bequests and devises designated in both that will and the former will, rather than to the property remaining after distribution of the specific bequests designated in the holographic will alone.
 [3] "In the construction of wills the paramount rule, to which all others must yield, is that a will is to be construed according to the intention of the testator, as expressed therein," (Estate of Lawrence, 17 Cal.2d 1, 6 [108 P.2d 893]); this intention must be determined from the language used in his will (Estate of Lawrence, supra, 17 Cal.2d 1, 6; Estate of Plumer, 159 Cal.App.2d 389, 392 [324 P.2d 346]; Estate of Luckel, 151 Cal.App.2d 481, 487 [312 P.2d 24]; Estate of O'Brien, 74 Cal.App.2d 405, 408 [168 P.2d 432]; Estate of Moorehouse, 64 Cal.App.2d 210, 216 [148 P.2d 385]; Estate of Mallon, 28 Cal.App.2d 106, 110 [81 P.2d 992]; Estate of Bourn, 25 Cal.App.2d 590, 602 [78 P.2d 193]); and the rule that two testamentary instruments should be construed together, "like any other rule of construction, is but a guide for the purpose of ascertaining" that intention. (Estate of Bergland, 180 Cal. 629, 632 [182 P. 277, 5 A.L.R. 1363]; Estate of Brodersen, 102 Cal.App.2d 896, 902 [229 P.2d 38].)
 The trial court correctly determined that, by the provisions in the holographic will stating, "Tommy -- Lindy the rest of my property", Mrs. Wiemer intended to devise and bequeath to her two foster great-grandchildren the residue of her estate. [1b] The error committed by that court was in concluding that in so stating Mrs. Wiemer was not referring to the "rest" of her "property" after the payment of $10,000 to Maude, her sister, and $5,000 to Orlan Kiser, but was referring to the "rest" of her "property" after the payment of these two legacies and compliance with the specific bequests and devises contained in her prior will. [4] In Estate of Bergland, 180 Cal. 629, 632-633, the court stated:
 "The two wills should be read together in the sense that each should be read in the light of the other, and their terms *12 harmonized so far as possible, but this is a very different thing from changing the express terms of the later will by importing conditions into it without express warrant contained in it, itself. We do not mean to say that a case is not possible where this may be properly done by implication only. But to justify this the circumstances must be such as fairly to show affirmatively that the testamentary intent of the decedent at the time of his last expression included not merely the matters which he then set down, but also those which he had set down on a previous occasion."
 This statement is applicable to the case at bar. [1c] The holographic instrument of June 22, 1959, was an independent testamentary act; was entitled "Will"; was executed more than five years after the formal "Will"; made no reference to the latter; followed the death of some of the beneficiaries in the prior will; and was sufficient in itself to completely dispose of all of the property of the testatrix. [5] Where two instruments are admitted to probate as the last will of a decedent and the later thereof, as such, fully and independently disposes of his entire property in a manner inconsistent with the dispositive provisions of his earlier declaration, the provisions of the later instrument control the disposition of his estate. (Estate of Salmonski, 38 Cal.2d 199, 209-212 [238 P.2d 966]; Estate of Siemers, 202 Cal. 424, 435 [261 P. 298]; Estate of Bassett, 196 Cal. 576, 580 [238 P. 666]; Estate of Iburg, supra, 196 Cal. 333, 334-338 [238 P. 74]; Estate of Marx, 174 Cal. 762, 764 [164 P. 640, LRA 1917F 234]; Estate of Brodersen, supra, 102 Cal.App.2d 896, 902; Estate of Martin, 31 Cal.App.2d 501, 506 [88 P.2d 234]; Estate of Mallon, supra, 28 Cal.App.2d 106, 110.) [6] Under these circumstances, although "the will and codicil together constitute the decedent's last will in testamentary disposition of his estate, they will not be regarded as a single instrument and as if both had been executed at the time of making of the codicil," because the manifest intention of the testator requires otherwise. (Estate of Salmonski, supra, 38 Cal.2d 199, 210.) [2b] In the instant case, the holographic instrument which the testatrix called a "Will," and the court in the order admitting it to probate called a "codicil," was independently sufficient to dispose of the whole of her estate; did not indicate any intention to add specific bequests to her previously executed formal will; contained provisions which, when considered as a unit, were wholly inconsistent with the dispositive provisions of the former will; and, being the decedent's *13 latest testamentary expression, controls the disposition of her estate. (Prob. Code, 72, 103; Estate of Salmonski, supra, 38 Cal.2d 199, 212; Estate of Iburg, supra, 196 Cal. 333, 334.)
 Those parts of the findings of fact and conclusions of law which construe the testamentary instruments in question, except as they determine that the bequest to Orlan Kiser is in the sum of $5,000 are set aside, and that part of the order appealed from which decrees partial distribution is reversed, with instructions to make and file findings of fact and conclusions of law respecting such issues in harmony with the views expressed herein, and to enter an order of partial distribution in accord therewith and in accord with the law and the facts in the premises. All other parts of the order appealed from are affirmed. The appellants Thomas Lee and Linda Lee will recover their costs on appeal.
 Griffin, P. J., and Shepard, J., concurred.
NOTES
[fn. 1] 1. From extrinsic evidence the court determined that the figures "$5,0000" were meant to be $5,000.00. This finding is uncontested.